IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFF LEPKA,<br><br>                Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security<br>Administration,<br><br>                Respondent. | Case No. 3:06-CV-00116-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

**Introduction**

Currently pending before the Court for its consideration is Petitioner Jeff Lepka's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed March 20, 2006. The Court has reviewed the Petition for Review, the answer, the parties' memorandums and the administrative record (AR), and for the reasons that follow will affirm the decision of the Commissioner.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), upon his appointment as Acting Commissioner of Social Security on February 12, 2007, Michael J. Astrue is substituted for Jo Anne B. Barnhart.

**Memorandum Decision and Order - Page 1**

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 6, 2003, alleging disability due to anxiety with panic attacks and seizures, and has requested a closed period of disability beginning March 29, 2001 and ending October 30, 2004. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Paul Gaughen held a hearing on July 21, 2005, taking testimony from Petitioner and vocational expert Deb Uhlenkott. (AR 254–280). On October 25, 2005, ALJ Gaughen issued a decision finding Petitioner not disabled during the closed period because the Petitioner's history of drug and alcohol dependence was a contributing factor material to the determination of disability. (AR 13–26).

Petitioner filed a timely appeal to the Appeals Council. The Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (AR 7–10). Petitioner appealed the final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 43 years old with a high school education and plumbing apprenticeship. His past relevant work experience includes maid, handyman, plumbers helper, pipe cleaner, and store clerk.

## II.
## Sequential Process

The claimant seeking benefits bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any

**Memorandum Decision and Order - Page 2**

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  *See also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

To make a determination of disability, the Commissioner follows a five-step sequential evaluation.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  At step two, it must be determined whether claimant suffers from a severe impairment.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  If a claimant demonstrates an inability to perform past relevant work, the burden then shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

When there is evidence of alcoholism or drug use, however, a person found to be disabled after employment of the sequential evaluation will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

**Memorandum Decision and Order - Page 3**

42 U.S.C. § 423(d)(2)(C).  The regulations provide that the "key factor" in the analysis is whether the commissioner would still find a person disabled if he or she stopped using alcohol.  20 C.F.R. § 416.935(b)(1).  To make this finding, the Commissioner must determine which of a disabled person's current physical and mental limitations would remain if the petitioner stopped using alcohol, and then determine whether those remaining limitations would be disabling under the five-step analysis.  20 C.F.R. § 416.935(b)(2).  If a claimant's remaining limitations would still be disabling, then alcoholism will not be a contributing factor material to the determination of disability and the disabled person will be eligible for benefits.  Conversely, if the limitations would not be disabling, then alcoholism will be a contributing factor and the person will be ineligible for benefits.  The disabled person bears the burden of proving that his alcoholism is not a contributing factor material to the disability determination.  *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

### III.
### Standard of Review

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Univ. Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**Memorandum Decision and Order - Page 4**

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

### IV.
### Discussion

The ALJ evaluated Petitioner's impairments independent of his alcohol abuse during the period at issue, and found that his anxiety and resulting panic disorder were not "severe" at step two of the analysis. This determination resulted in a finding that alcoholism was a contributing factor material to the determination of disability and the ALJ denied benefits. (AR 22–23). In making his finding, the ALJ concluded that the opinions of the examining state agency

**Memorandum Decision and Order - Page 5**

consultants, Drs. Alexander and Underwood, were "overstated," and that absent substance abuse, the only medical evidence suggesting mental impairment was Petitioner's subjective claim of disability, which the ALJ found not credible. (AR 23).

The first error Petitioner claims is that the ALJ failed to consider Petitioner's disability in the absence of alcohol use. Petitioner also asserts the ALJ erred in rejecting the examiners' reports, because those reports did find "severe" impairment independent of alcohol abuse, and that based upon those reports, the vocational expert testimony would support a finding of disability independent of Petitioner's alcoholism. The Court will address each of these arguments in turn.

**A.     ALJ's Analysis of Disability.**

Petitioner claims the ALJ erred because he failed to consider disability independent of alcoholism. The Court finds this argument to be without merit. When a claimant presents with alcohol dependency, the ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (explaining that the implementing regulations require a conditional finding of disability with alcoholism as a consideration before conducting the five part inquiry again, without considering alcoholism). If the ALJ finds that the claimant is not disabled after that inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. *Bustamante v. Massanari*, 262 F.3d at 955. If the ALJ finds that the claimant is disabled and there is medical evidence of his or her alcoholism or drug addiction, then the ALJ should proceed under 20 C.F.R. §§ 404.1525 or 416.935 to determine if the claimant would still be disabled if he stopped using alcohol or drugs.

**Memorandum Decision and Order - Page 6**

The ALJ correctly performed the required analysis.  The ALJ determined that Petitioner's alcohol dependency in combination with Petitioner's recurrent depressive and social phobia symptoms was severe and met several listed impairments (12.04, affective disorder; 12.06, anxiety related disorder; and 12.09, substance addiction disorder).  (AR 22).  Consequently, the ALJ determined Petitioner was disabled when alcoholism was considered, and so proceeded to evaluate Petitioner's claims of disability independent of his alcohol abuse.  (AR 22).  In conducting that evaluation under the five-step process, the ALJ determined that Petitioner's recurrent depression with associated social phobia and anxiety did not constitute a "severe" impairment, and so terminated the analysis at step two.  (AR 22–23).

Accordingly, the Court finds that the ALJ did not commit error in his analysis, and correctly applied the five-part test.

**B.    ALJ's Evaluation of the Medical Evidence.**

Petitioner argues that the ALJ's finding that Petitioner's impairments independent of his alcoholism were not "severe" was in error based upon the medical evidence.  He specifically points to two of the examiner's reports, wherein Dr. Alexander and Dr. Underwood[2] determined Petitioner's anxiety was "moderately" severe, and that the examiners' conclusions were independent of his alcohol addiction.  At the hearing, the claimant propounded a hypothetical question to the vocational expert based upon Dr. Alexander's and Dr. Underwood's assessment, and based upon their findings of "moderate" limitations in several areas, she concluded that Petitioner was disabled independent of his alcoholism.  The ALJ rejected these conclusions, finding the opinions of Drs. Alexander and Underwood overstated and based upon Petitioner's

---

[2]  Dr. Underwood's evaluation was reviewed by Dr. Callao.

**Memorandum Decision and Order - Page 7**

self-serving statements, which were in turn not credible after considering the underlying medical evidence.

The Social Security regulations define a "severe" impairment as an impairment that significantly limits a claimant's "ability to do basic work activities." *Bustamante v. Massanari*, 262 F.3d at 954 (quoting 20 C.F.R. §§ 404.1521, 416.921).[3] After carefully reviewing the ALJ's findings and the medical evidence in the record, the Court finds that substantial evidence supports the ALJ's rejection of Dr. Alexander's and Dr. Underwood's conclusions. Further, substantial evidence supports the ALJ's determination that during the period in question, from March 29, 2001 to October 30, 2004, Petitioner's anxiety and panic attacks were not severe when the alcohol abuse is not taken into consideration.

### 1.     Rejection of the Examining Physicians' Reports.

Shortly after Petitioner applied for benefits, Dr. Alexander examined him on October 9, 2003. (AR 189–194). At this time, Petitioner reported that he was abstinent from alcohol, and that his interests included playing basketball, watching television, mowing lawns to make a little money, reading, visiting friends, talking on the phone, and that he is able to cook, do laundry and

---

[3] 20 C.F.R. § 404.1521 states in full:

> What we mean by an impairment(s) that is not severe.
> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include-
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921 is identical, except for the heading.

**Memorandum Decision and Order - Page 8**

household chores.  (AR 190–191).  Dr. Alexander diagnosed Petitioner at that time with alcohol dependence, early partial remission, with major depressive disorder and social phobia.  (AR 193).  She further determined that Petitioner had the requisite daily living skills to care for himself, but that his ability to understand and remember as well as sustain concentration and persist seemed "moderately impaired[,]" while his ability to interact appropriately in social and work related situations, adapt to changes, and respond appropriately to criticism and suggestions were "markedly impaired."  (AR 193).

Dr. Underwood examined Petitioner, reviewed the medical records and completed a "check the box" form on October 23, 2003.  In her opinion, Petitioner's primary problem was substance addiction, with anxiety and affective disorders secondary.  (AR 195–222).  She indicated that without drug and alcohol use, Petitioner experienced moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, but that the evidence did not establish the "B" or "C" criteria for an anxiety related disorder or an affective disorder.  (AR 205–206).  In her written opinion, she stated that Petitioner had a "severe impairment present with residual capacity to work when not abusing alcohol.  Severe alcohol dependence at this time which severely hampers any valid diagnosis or treatment of any other conditions."  (AR 207).  On the Functional Capacity Assessment, she found moderate limitations in some areas, but explained that Petitioner was capable of "simple and familiar tasks when not abusing alcohol . . . Has good basic social skills.  Appropriate with no symptoms anxiety . . . , able to do simple cognitive items.  Current problem is severe alcoholism."  (AR 213).

Petitioner began working again in November 2004 as a maid at a hotel on a part time

**Memorandum Decision and Order - Page 9**

basis. (AR 267). He admits to continuing to drink a six-pack two or three times a month. (AR 269). The vocational expert testified that his current position is semi-skilled. (AR 273).

Despite notations by both Dr. Alexander and Dr. Underwood that their determinations were made independent of Petitioner's alcohol abuse, the ALJ rejected Dr. Alexander's opinion because he did not find Petitioner's allegations of abstinence from alcohol use to Dr. Alexander to be credible. (AR 22). Therefore, the ALJ determined that Dr. Alexander's opinion of moderate impairment when alcohol was not a factor was flawed, since if he was continuing to drink, the limitations assessed were with alcohol use. (AR 22). The ALJ also found Petitioner's statements to Dr. Alexander to be inconsistent with the medical records. (AR 24). The ALJ found Dr. Underwood's report, as reviewed by Dr. Callao, more credible, as they assessed "'B' criteria with substance abuse" in keeping with the record as a whole. (AR 22). But, the ALJ concluded that when considering the assessment of functional capacity without alcohol, Dr. Underwood's opinions were "overstated." (AR 22–23). At the hearing, Petitioner admitted that he still was not abstinent from alcohol, but that he was able to work. Therefore, the ALJ concluded that, absent alcohol abuse, Petitioner would only have mild restrictions that were not severe. (AR 23).

To reject the uncontradicted opinions of examining psychologists Dr. Alexander and Dr. Underwood, the Commissioner must provide "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of examining physicians are entitled to great weight in the absence of other opinions. *See Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not. *See* 20 C.F.R. § 404.1527(d)(3). In this case, the ALJ explained that he rejected the

**Memorandum Decision and Order - Page 10**

conclusions of Drs. Alexander and Underwood because, absent Petitioner's subjective claims of mental impairment, the medical records were devoid of any anatomical or physiological abnormality to account for his disability, absent substance abuse.  In essence, he rejected their opinions because Petitioner's subjective complaints were inconsistent and not credible, thereby causing the doctors' opinions to be based upon insufficient evidence.  *See Lester v. Chater*, 81 F.3d at 831 (explaining that it was acceptable to reject an examining psychologist's opinion when that opinion conflicted with testimony from the claimant himself and with medical reports contained in the record, and citing *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995)).

### **2.** **Petitioner's Credibility.**

To reject Petitioner's subjective complaints and thereby provide a basis for rejecting the examining physicians' reports, the ALJ must provide "specific, cogent reasons for the disbelief." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  If the opinions of Drs. Alexander and Underwood were based upon the self-reporting of an unreliable person (the Petitioner), the ALJ can accord them less weight.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). ("[An opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.").

The ALJ provided clear and convincing reasons for rejecting Petitioner's testimony and gave a detailed written opinion summarizing the evidence that undermined Petitioner's complaints as he reported them to Dr. Alexander and Dr. Underwood.  Prior to the time period at issue in this matter, Petitioner's alcohol related problems were documented by various emergency room treating physicians during 1998.  On January 16, 1998, Dr. Bond treated

**Memorandum Decision and Order - Page 11**

Petitioner for what was diagnosed as alcohol withdrawal seizures. (AR 122). Petitioner was subsequently admitted for detox related to alcohol abuse, but did not complete treatment. (AR 124). Petitioner did not present to the emergency room again until February 2001, again seeking medical intervention for alcohol dependency. (AR 129). Petitioner does not complain of any subjective anxiety related symptoms or panic attacks until presenting to the St. Joseph Medical Center Emergency Room on March 29, 2001, the date of alleged onset of disability. (AR 136–144). He again presents to the emergency room seeking medical intervention for detox, and his primary diagnosis is alcohol dependency. (AR 137–139). On the basis of Petitioner's description of his subjective anxiety and panic symptoms, Dr. Kadrmas, Petitioner's treating physician on admission, diagnosed alcoholism with panic disorder and agoraphobia, and recommended an alcohol treatment program. (AR 140–144). Significantly, Dr. Kadrmas did not recommend treatment for Petitioner's underlying mental health complaints.

Petitioner presented to the emergency room at Tri-State Memorial Hospital on May 20, 2001, primarily for alcohol withdrawal symptoms and anxiety related to withdrawal. (AR 158–159). Despite being seen at Tri-State on March 25, 2001, and complaining of anxiety, (AR 151), Dr. Chin's report from May 20, 2001, does not denote any anxiety related diagnosis, only alcohol dependency. (AR 158–159). On June 12, 2001, Petitioner presented to Tri-State Emergency Department seeking alcohol detox treatment and complaining of a seizure, which Dr. Driver could not confirm. (AR 166–167). Petitioner visited various emergency departments throughout the remainder of 2001, predominantly complaining of alcohol related symptoms, seeking detox treatment and a prescription for Ativan. (AR 171–177). His last documented visit to the emergency room occurred on February 22, 2002. On that visit, Petitioner again presented

**Memorandum Decision and Order - Page 12**

with alcohol related withdrawal symptoms, but did not mention any symptoms of anxiety or panic attacks other than stress related to a custody battle involving his daughter. (AR 183–188).

Significantly during this period, although Petitioner was diagnosed with panic attacks and anxiety by Dr. Kadrmas on or about March 29, 2001, the course of treatment was not to treat Petitioner's psychiatric symptoms, but to recommend an appropriate alcohol dependency program. Throughout the remainder of 2001 and the through February 2002, when seeking medical treatment, Petitioner never complained of anxiety symptoms or panic attacks, but rather sought treatment for detoxification, hemorrhoids, a fractured hand, vomiting, and other ailments, the majority of which were all secondary to his alcohol abuse. (AR 136-188). Despite being advised early on of psychological treatment and medical assistance programs, (AR 119, 139, 157), Petitioner failed to seek any psychiatric treatment. Also, Dr. Kadrmas indicated that, once Petitioner's chemical dependency was treated, "antidepressants and/or BuSpar" could control Petitioner's panic symptoms. (AR 143).

The ALJ reviewed the above medical history in detail, noting the inconsistencies in Petitioner's complaints and lack of treatment for psychological impairment independent of his alcoholism. (AR 24). The ALJ commented that during one of his hospitalizations, a psychological evaluation indicated that Petitioner did not need to be admitted for psychiatric reasons. (AR 23). The ALJ noted that Petitioner failed to continue with prescribed medication regimens that would have controlled his underlying mental health problems. (AR 23). And, Petitioner did not consistently present to various emergency rooms during the relevant period complaining of mental health problems, as the majority of his visits established that he wanted detox treatment. (AR 23).

**Memorandum Decision and Order - Page 13**

Based upon the above findings, the ALJ explained that Petitioner's report of alcohol abuse and substance abuse to Dr. Alexander was inconsistent with the medical evidence, thus causing him to reject Dr. Alexander's conclusions because they were based upon self-reports that were not fully credible. (AR 24). The ALJ also explained that the reports from the treating physicians in the emergency rooms and elsewhere established that Petitioner would not always tell the truth to hospital staff, one time telling hospital staff that he was suicidal in order to be admitted to the hospital, and another time completely denying any past history of drug or alcohol abuse. (AR 24). The ALJ rejected Dr. Underwood's report, finding the medical evidence insufficient to support her conclusions as well. Finally, the ALJ noted that at the time Dr. Alexander and Dr. Underwood examined him, Petitioner reported that he mowed lawns, watched television, and did work around the house, activities that the ALJ explained were inconsistent with a finding of severe impairment.

The Court therefore finds that the ALJ's opinion and reasons for rejecting the reports of Drs. Alexander and Underwood meet the clear and convincing standard.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that substantial evidence supports the Commissioner's decision and it is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.



DATED: September 12, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge